IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES CALHOUN-EL, 160-083 | * | |
| | * | |
| Calhoun-El, | * | |
| | * | |
| v | * | Civil Action No. RDB-13-692 |
| | * | |
| WARDEN BOBBY P. SHEARIN, et al | * | |
| | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Pending is self-represented Plaintiff James Calhoun-El's ("Calhoun-El") Complaint under 42 U.S.C. § 1983. (ECF No. 1). Defendants, Bobby Shearin, David Wade, Keith Arnold, and Joshua Pritts,[1] by their counsel, have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 22) with verified exhibits in reply to which Calhoun-El has filed an opposition with his declaration. (ECF No. 28). No hearing is needed to resolve the issues presented. *See* Local Rule 106.5 (D. Md. 2011). Defendants' pleading (ECF No. 22) will be treated as a Motion for Summary Judgment and GRANTED for reasons to follow.[2]

### BACKGROUND

#### A. PLAINTIFF'S CLAIMS

Calhoun-El claims that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when he was an inmate at North Branch Correctional Institution

---

[1] At the time Calhoun-El filed the Complaint Bobby Shearin was Warden, David Wade was Assistant Warden, Keith Arnold was Chief of Security, and Joshua Pritts was a correctional officer at North Branch Correctional Institution. Calhoun-El is suing Shearin, Wade, and Arnold in their official capacities. (Complaint, ECF at 4).

2 Accordingly, Calhoun-El's Motion for Trial by Jury (ECF No. 28) will be denied as moot.

("NBCI").³ He alleges that on January 31 and February 3, 2012, Officer Pritts "used the cell door to slam Plaintiff between cell door [sic], causing a gash in Plaintiff's back shoulder area." (Complaint, ECF No. 1 at 8). He also asserts, apparently as background information, that he was slammed by a cell door by unnamed corrections personnel on or about September 2009.⁴ Additionally, Calhoun-El claims his due process rights were violated because Defendants deprived him of the opportunity to "grieve" his conditions of confinement. *Id.* He is requesting unspecified declaratory relief, as well as compensatory and punitive damages.

### B. DEFENDANTS' EXHIBITS

Defendants' verified exhibits and declarations are undisputed and summarized as follows. On August 9, 2009, Calhoun-El filed an Administrative Remedy Procedure ("ARP") request claiming that, two days prior, he was slammed into a wall by a sliding sally port cell door while leaving the multi-purpose building at NBCI. (Def. Exhibit 1, Decl. of Randy Durst at 7).⁵ Calhoun-El alleged the unnamed operator of the door had used it as a weapon. *Id.* at 8.

Lt. Manuel was assigned to investigate the ARP. *Id.* at 9. The investigation included interviews with Calhoun-El, correctional officers, and medical staff. *Id.* at pp. 9-10. Calhoun-El, who was interviewed twice, claimed during his first interview that he had placed a sick call request and told the medical providers that the sliding cell door injured his hand. *Id.* Manuel thereafter spoke with medical staff and reviewed Calhoun-El's medical records. *Id.* Manuel

---

³ Calhoun-El is presently confined at Western Correctional Institution. *See* http://www.dpscs.state.md.us/. inmate/search.do?searchType=detail&id=77455

⁴ Although the Complaint references the 2009 cell door incident, it does not appear to be the basis of Calhoun's claims. As Defendants note, the 2009 matter was considered by an administrative law judge who dismissed it stating, "as a matter of law, [Calhoun-El] has failed to prove that he suffered a compensable injury as a result of [. . .] negligence or other improper act." *See infra* p. 3. Further, a claim based on the 2009 incident is likely barred by the applicable statute of limitations. Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law. *See Burnett v. Grattan*, 468 U.S. 42, 49 (1984); *Chardon v. Fumero Soto*, 462 U.S. 650, 655–656 (1983). Maryland's general three-year statute of limitations for civil actions is most applicable here. *See* Md. Code Ann., Cts. & Jud. Proc., § 5–101.

⁵ All exhibits referenced herein were filed by Defendants and docketed at ECF No. 22 unless otherwise indicated.

2

determined that Calhoun-El had provided false information during their first interview and had not been seen by medical staff for injury from a sliding cell door. *Id.* Further, the correctional officers that were responsible for the operation of the cell door at issue both stated that they had no knowledge of Calhoun-El being hit by a cell door. *Id.* During his second interview, Cahoun-El claimed that he told medical staff that the cell door injured this back, and not his hand. *Id.*

On October 16, 2009, Manuel recommended dismissal of the ARP because Calhoun-El had provided false information and there was no evidence that he had been hit by a cell door. *Id.* The Warden accepted the recommendation and dismissed the ARP. *Id.* at 7.

On October 21, 2009, Calhoun-El filed a grievance with the Inmate Grievance Office ("IGO") appealing the dismissal of his August 9, 2009 ARP. *Id.* at 11. On March 3, 2010, a hearing was held before an Administrative Law Judge ("ALJ"). *Id.* 15-19. On April 28, 2010 the ALJ dismissed the grievance because "as a matter of law, [Calhoun-El] has failed to prove that he suffered a compensable injury as a result of [. . .] negligence or other improper act . . . ." *Id* at 18.

On January 31, 2012, Calhoun-El submitted a sick call request form complaining of "neck, shoulder, and back injuries after being slammed between [a] cell door." *Id.* at 16. He told medical providers on February 3, 2012, that he had "a large scar on [his] back from when [he] got slammed in the cell door." *Id.* at 17. Examination revealed a "small scratch/abrasion" on Calhoun-El's left shoulder that "appeared[ed] to be well healing." *Id.* The abrasion was diagnosed as "superficial" and Calhoun-El was instructed to submit another sick call slip if his condition did not improve. *Id.* The attending nurse noted on the medical record that the abrasion appeared "self-inflicted." *Id.* Calhoun was questioned about the incident and "could not remember when [the] alleged injury occurred." *Id.* The medical chart notes "Inmate was seen on

1/27; twic [sic] pm 1/26/ 1/20 by RN and 1/20 for chronic care clinic by MD with no mention of alleged incident." Calhoun-El submitted no additional sick calls requests concerning the abrasion. He has not filed any request for administrative review of his claims that Pritts injured him with the cell door on January 31 or February 3, 2013. (Declaration of Jared Zais, Exhibit 3, with attachments, at ¶ 5; *see also*, Declaration of Scott Oakley, Exhibit 4: ¶ 3).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis of its motions and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *See id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court also has an affirmative obligation to prevent factually unsupported claims

and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993). When a motion for summary judgment is properly made and supported, the nonmoving party must set out specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *See Anderson*, 477 U.S. at 249–50. A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citations omitted). Mindful that Calhoun-El is proceeding *pro se*, this Court must liberally construe his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pleadings filed by a *pro se* litigant are held "to less stringent standards than formal pleadings drafted by lawyers).

## DISCUSSION

Defendants move for summary judgment in their favor based on Eleventh Amendment immunity, and raise failure to state a claim and *respondeat superior* as affirmative defenses.[6] Additionally, they aver Defendant Pritts is entitled to summary judgment as a matter of law.

### I. EIGHTH AMENDMENT CLAIMS

#### A. DEFENDANTS SHEARIN, WADE, AND ARNOLD

Defendants Shearin, Wade, and Arnold assert the claims against them in their official capacities are barred under the Eleventh Amendment. Regarding the claims against them in their

---

[6] Defendants also assert failure to exhaust administrative remedies as a defense. Calhoun-El counters that he sent "grievances" to Shearin and Arnold, and neither responded. (Plaintiff's Reply, ECF No 29 at 9; *see also* Calhoun-El Declaration, ECF No. 29 Exhibit 1). For reasons stated herein, even if properly administratively exhausted, the claims provide no grounds for relief. Similarly, this Court need not reach Defendants' qualified immunity defense in light of these determinations.

individual capacities, they assert Calhoun-El fails to state a claim upon which relief may be granted.

### 1. ELEVENTH AMENDMENT

The Eleventh Amendment bars suit against a state official in his official capacity where, as here, the suit is essentially to recover money from the state. In such cases, state officials may invoke Eleventh Amendment immunity because the state is the real party in interest. The Supreme Court has said: "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71(1989); *see Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). Thus, states and their officers, sued in their official capacities, are not "persons" subject to suit for money damages under § 1983. *Will*, 491 U.S. at 71.

Absent consent, the Eleventh Amendment precludes suit in federal court against a state by its own citizens. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S, 356 (2001). Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, see Md. Code (2009 Repl. Vol.), State Gov't Article, § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court with respect to claims under § 1983. Accordingly, Calhoun-El's claims for money damages against Defendants Shearin, Wade, and Arnold in their official capacities are barred under the Eleventh Amendment.

### 2. FAILURE TO STATE A CLAIM AND RESPONDEAT SUPERIOR

Shearin, Wade, and Arnold challenge the claims against them in their individual capacities, arguing that Calhoun has failed to allege any facts to support liability. They note

accurately that the Complaint is completely devoid of any specific factual allegations against them, and fails to assert any theory of liability under which they could be found responsible for Calhoun-El's alleged damages.

Calhoun-El does not allege facts to demonstrate personal wrongdoing by Shearin, Wade or Arnold. Further, the doctrine of respondeat superior does not apply in § 1983 claims. *See Monell v. New York Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Instead, individual liability must be based on personal wrongdoing or supervisory actions that violate constitutional norms. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

To establish supervisory liability against a warden or others under § 1983, a plaintiff must show: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw*, 13 F.3d at 799. Calhoun-El does not allege facts or provide evidence to suggest that Defendants Shearin, Wade, or Arnold are subject to liability on this basis. Consequently, Shearin, Wade and Arnold are entitled to summary judgment in their favor.

### B. CLAIMS AGAINST OFFICER PRITTS

The Cruel and Unusual Punishments Clause of the Eighth Amendment, " 'protects inmates from inhumane treatment and conditions while imprisoned.' " *See Iko v. Shreve*, 535

F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). Eighth Amendment analysis requires inquiry as to whether prison personnel "acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams*, 77 F.3d at 761.

The objective component focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). Absence of significant injury is not dispositive of a claim of excessive force. *Id.* The objective component can be met by "the pain itself," even if the prisoner has no "enduring injury." *Williams*, 77 F.3d at 762 (internal quotation marks omitted). Regarding the subjective component, the key question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986).

Aside from Calhoun-El's claim that he was subjected to cruel and unusual punishment on January 31 and February 3, 2012, when Pritts allegedly slammed him with a cell door, no exhibits support his claim of injury. Calhoun-El's medical records indicate that he was unable to tell his medical providers when the alleged incidences occurred, there is suggestion his abrasion was self-inflicted, and the abrasion was diagnosed as superficial. Mostly importantly, even if Calhoun-El had been struck by Officer Pritts with a cell door on either January 31 or February 3, 2012, Plaintiff sets forth no allegation to satisfy the objective component of his Eighth Amendment claim; *i.e.* to show Officer Pritts acted with a sufficiently culpable state of mind to inflict injury maliciously or sadistically. Thus, when the facts are viewed in the light most

favorable to Calhoun-El, no genuine issue of material fact is presented and Pritts is entitled to summary judgment in his favor as a matter of law.

## II. DUE PROCESS CLAIM

Lastly, Calhoun-El summarily claims Defendants deprived him of "an opportunity to aggrieve the conditions of his confinement." (Complaint, ECF No. 1 at 12). Inmates do not have a constitutional right to the establishment of an administrative remedy or other grievance process or to participate in one that has been voluntarily established by the state. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Calhoun-El not only fails to particularize his claim, but his prodigious record of more than 150 ARP requests filed since 2008, belies his claim of deprivation. (Decl. of Jared Zais, Exhibit 3 at ¶ 5).[7]

### CONCLUSION

For these reasons, this Court will grant Defendants' Motion for Summary Judgment. Summary judgment will be entered in favor of Defendants and against Plaintiff by separate order to follow.

MAY 16, 2014
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[7] The claims contained in a number of these ARPs were later raised in § 1983 claims considered by this Court. *See e.g. Calhoun-El v. Watson, et al.*, Civil Action No. RDB-12-2384; *Calhoun-El v Maynard, et al.*, Civil Action No. RDB-12-2814; *Calhoun-El v Stouffer, et al.*, Civil Action No. RDB-12-3390.

9